IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL MASLANA,
on behalf of Plaintiff and the
class members defined below,

    Plaintiff,

    vs.

GREETING TEAM, LLC,
doing business as
CUSTOMER CARE GLOBAL,

    Defendant.

24cv7096
Judge Mary M. Rowland
Magistrate Judge Beth W. Jantz

## AMENDED COMPLAINT – CLASS ACTION

### INTRODUCTION

1. Plaintiff Michael Maslana brings this action against Defendant Greeting Team, LLC, doing business as Customer Care Global ("Customer Care Global") to secure redress for Defendant's actions in collecting unlawful debts, consisting of illegal high-interest Internet loans.

### JURISDICTION AND VENUE

2. The Court has subject matter jurisdiction under 28 U.S.C. § 1331, 15 U.S.C. §1692k and 28 U.S.C. § 1367.

3. This Court has personal jurisdiction over Defendant because it is headquartered in Cook County, Illinois.

4. Venue is proper for the same reason.

5. Article III is satisfied because:

    a. Actions for statutory damages for making or collecting usurious loans were entertained by the courts of England and the United States in 1787. English Usury Act of 1713, 12 Anne Session 2 c. 17. All thirteen original American states replaced the English usury statutes with their own usury laws between

1641 and 1791. Christopher L. Peterson, *Usury Law, Payday Loans, and Statutory Sleight of Hand: Salience Distortion in American Credit Pricing Limits*, 92 Minnesota Law Review 1110, 1116-18 (April 2008), summarizing statutes allowing 5% to 8% interest.

b.  The receipt of unlawful and unwanted electronic messages satisfies Article III. *Gadelhak v. AT&T Services, Inc.,* 950 F.3d 458, 469 n.1 (7th Cir. 2020).

## PARTIES

6. Plaintiff Michael Maslana is a resident of Illinois.

7. Defendant Greeting Team, LLC, doing business as Customer Care Global ("Customer Care Global"), is a limited liability company organized under Missouri law with its principal place of business at 2500 W Higgins Road, Suite 950, Hoffman Estates, IL 60169. Its registered agent is MLF Business Services, Inc., 2001 Grand Blvd., Suite 500, Kansas City, MO 64108.

8. Customer Care Global is a collection agency, using interstate wires and the Internet to collect consumer debts for others.

9. Defendant holds a collection agency license from the State of Illinois.

10. Customer Care Global has a website (https://www.customercareglobal.com/) on which it states that "We are committed to offering the best debt collection services for your business."

11. Customer Care Global specializes in collecting high-interest Internet loans. Such loans are generally entered into for personal, family or household purposes and not business purposes.

12. One of the two executives of Customer Care Global, Bart Miller, is on the Board of Directors for the Online Lenders Alliance, an organization of lenders making loans over the Internet at more than 36% interest. He is also on its Executive Committee, and is their Treasurer.

13. Customer Care Global is a debt collector as defined in the Fair Debt Collection Practices Act, 15 U.S.C. §1692a(6) ("FDCPA").

## FACTS RELATING TO COLLECTION ATTEMPTS

14. On or about August 5, 2024, August 8, 2024, and August 12, 2024, Defendant sent three collection communications to Plaintiff seeking to collect an allegedly defaulted high-interest Internet loan made by an Internet lender, WithU. Two were sent by text message and the third by email. (Exhibits A-C)

15. The loan was made after March 23, 2021 at a rate of 421.5% (Exhibit D). It was made for personal, family or household purposes and not for business purposes.

16. WithU's loans are generally above 400%.

17. The loan was not legally enforceable and was void under the Illinois Predatory Loan Prevention Act, 815 ILCS 123/15-5-5 and 15-5-10 ("PLPA").

18. Each communication represented that Plaintiff owed money.

19. Plaintiff did not owe anything on the loan.

## FACTS RELATING TO LOAN SOUGHT TO BE COLLECTED

20. The loan was made by W6LS, Inc., doing business as WithU and WithU Loans ("WithU"). WithU claims to be a corporation organized under the laws of the Otoe Missouria Tribe of Indians ("Tribe"), a federally-recognized Indian Tribe in Oklahoma. It also claims to be owned by the Tribe. This is not in fact the case.

21. WithU operates an online lending website, www.WithULoans.com, which makes loans at interest rates exceeding 400% to consumers in many states, including Illinois.

22. WithU uses the address of 10600 S. Pennsylvania Ave., Suite 16 #828, Oklahoma City, OK 73170-4257. In fact, this address is a rented private mailbox in a UPS store.

23. The actual principal place of business of W6LS, Inc. is in Mission, Kansas, not on Tribal lands.

3

24. The Otoe-Missouria Tribe of Indians also claims, or claimed to operate, now or in the past, several other online payday lenders, including: (1) American Web Loan, (2) Clear Creek Lending, and (3) Great Plains Lending.

25. Each of these lenders provided off-reservation addresses as their offices, and all of them were rented mailboxes at the same private mailbox provider.

26. A company called Caliber Financial Services, Inc. ("Caliber"), operated www.WithULoans.com on behalf of non-tribal investors.

27. Caliber states on its website, www.CaliberFS.com, that its address is 1611 S. Utica Ave, #527, Tulsa, OK 74104-4909. This address is also a rented UPS Store mailbox.

28. Caliber states on its website that "We are headquartered in Red Rock, OK with additional offices located in Mission, KS."

29. The website contains a list of job openings, covering essentially all functions of a lending operation. The jobs are in Overland Park, Kansas and Mission, Kansas, not on tribal land. (Exhibit E-F) Caliber executives are located in Mission, Kansas and "Kansas City Metropolitan Area." (Exhibits G-H)The recruiting manager was located in Sugar Land, Texas. (Exhibits I-J)

30. Caliber states on its website that it provides "Next Gen Fintech Solutions All In One Place," that "We provide end-to-end portfolio management and personalized fintech solutions for partners who want to expand their portfolio and product offerings," and that "We have the experience, mindset, processes and tools to create real-time, streamlined experiences and personalized fintech solutions that provide expanded revenue streams f or the Otoe-Missouria Tribe of Indians."

31. In the argot of the online lending world: "fintech," means Financial Technology companies; "portfolio management" refers to the business of overseeing and collecting short-term payday loans for a fee on behalf of a third party; and "partners" refers to beneficial owners of online lending websites, who provide the working capital to fund loans and who exert high levels of control

over the enterprises.

32. Thus, in English, Caliber's website states it manages collection and underwriting operations on behalf of non-tribal investors who wish to profit from a "tribal" lending model.

33. The server hosting the WithU website is located in California.  (Exhibit K)

34. At no time has WithU or anyone connected with it had a license from the Illinois Department of Financial and Professional Regulation or a state or federal banking or credit union charter, entitling it to make loans to Illinois residents at more than 9% interest (but not more than 36%).

35. Plaintiff signed the loan agreement electronically, while in Illinois.

36. The funds were transferred electronically to Plaintiffs' bank accounts in Illinois.

37. Repayment was to be made by ACH debit of Plaintiffs' bank account in Illinois.

38. Plaintiff was in Illinois at all times. At no time did Plaintiff visit the state of Oklahoma or any business premises of WithU or anyone else connected with the loans or tribal land.

39. WithU was aware that Illinois and other states have rate limitations that applied to their loans. Prior to the loan to Plaintiff, WithU received a notice from the State of Washington that its loans to residents of that state were illegal. (Exhibit L)

## ILLINOIS PROHIBITIONS ON PREDATORY LOANS

40. Effective March 23, 2021, the PLPA made it unlawful for anyone other than a bank to make loans to Illinois residents at annual percentage rates in excess of 36%. 815 ILCS 123/15-1-1 *et seq*. "Any loan made in violation of this Act is null and void and no person or entity shall have any right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related to the loan." 815 ILCS 123/15-5-10.

41. Loans made over the Internet to Illinois residents are specifically covered. 815 ILCS 123/15-1-10 (definition of "loan").

42. The PLPA expressly negates the ability of consumers to waive its protection by agreement. 815 ILCS 123/15-10-25, "No waivers," states that "There shall be no waiver of any provision of this Act." Furthermore, "No person or entity may engage in any device, subterfuge, or pretense to evade the requirements of this Act . . . ." 815 ILCS 123/15-5-15(a).

43. Under 815 ILCS 123/15-10-5(b), "Any violation of this Act, including the commission of an act prohibited under Article 5, constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act."

44. Both before and after March 23, 2021, it was unlawful for anyone who did not have a bank or credit union charter or a consumer lending license issued by the Illinois Department of Financial and Professional Regulation to make loans at more than 9% interest. 205 ILCS 670/1.

45. Any loans to Illinois residents at more than 9% that are made by unlicensed persons are void and unenforceable. 205 ILCS 670/20(d) ("Notwithstanding any other provision of this Section, if any person who does not have a license issued under this [Consumer Instalment Loan] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the person who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan.").

46. Any loans to Illinois residents at more than 9% that are made by unlicensed lenders violate the Interest Act, 815 ILCS 205/4, and are subject to statutory damages under 815 ILCS 205/6.

47. Illinois has a criminal usury statute provides that the making of a loan by an unlicensed person at more than 20% interest is a felony. 720 ILCS 5/17-59. It applies to a person who "while either within or outside the State, by his own conduct or that of another for which he is legally accountable," engages in conduct that amounts to an offense if "the offense is committed either wholly or partly within the State." 720 ILCS 5/1-5.

48. Contracts made in violation of licensing requirements intended to protect the public,

6

or in violation of criminal laws imposing substantial penalties, are void. *Chatham Foot Specialists, P.C. v. Health Care Serv. Corp.*, 216 Ill. 2d 366, 380, 837 N.E.2d 48 (2005). Neither choice of law clauses or other contractual devices can be used to avoid invalidation of loans made at criminally usurious rates. *Madden v. Midland Funding, LLC,* 237 F. Supp. 3d 130, 150 (S.D.N.Y. 2017) ("That New York chose to criminalize such conduct is further evidence that its usury prohibition is a fundamental public policy."); *McDonald v. CashCall, Inc.*, 16cv2781, 2017 U.S. Dist. LEXIS 64761 (D.N.J., April 28, 2017), aff'd, 883 F.3d 220 (3d Cir. 2018).

49. The Illinois Department of Financial and Professional Regulation has repeatedly brought cases against unlicensed out of state tribal and other lenders that make loans via the Internet or similar means to Illinois residents in Illinois. *E.g., In the Matter of Red Leaf Ventures, LLC*, No. 12 CC 569); *In the Matter of Money Mutual, LLC*, No. 12 CC 408; *In the Matter of Hammock Credit Services*, No. 12 CC 581; *In the Matter of Makes Cents, Inc., d/b/a Maxlend*, No. 17 CC 133.

### INVALIDITY OF CLAIM OF TRIBAL IMMUNITY

50. In an attempt to evade prosecution under usury laws of states like Illinois, online lenders frequently create an elaborate charade claiming their otherwise illegal businesses are entitled to the sovereign immunity of Native American tribes.

51. However, an entity must function as a legitimate "arm of the tribe" in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

52. WithU does not qualify.

53. The Tribe receives only a couple of pennies of each dollar as "rent," and 98% or more of revenues flow to non-tribal persons and entities,

54. None of WithU's business is conducted on the Tribe's reservation. All essential business operations are performed in other locations outside of the Tribe's jurisdiction.

55. Further, sovereign immunity, even if legitimately invoked, still does not turn an

otherwise illegal loan into a legal one. *See, e.g., United States v. Neff*, 787 F. App'x 81 (3d Cir. 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme; sovereign immunity does not transform illegal loans into legal ones, and "reasonable people would know that collecting unlawful debt is unlawful").

56. Even if loans are actually made by a tribe and the tribe cannot be sued, the loans are not enforceable and a debt collector cannot represent otherwise, expressly or by implication.

57. Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in the U.S. District Court for the Southern District of New York convicted Scott Tucker and Timothy Muir on 14 felony counts for their operation of a network of tribal lending companies. *See United States v. Tucker, et al.*, No. 1:16-cr-00091-PKC (S.D.N.Y). The conviction was affirmed in *United States v. Grote*, 961 F.3d 105 (2d Cir. 2020).

## INVALIDITY OF ARBITRATION AGREEMENT

58. To further attempt to insulate itself from legal action for usury, WithU included an arbitration agreement in its loan document which (a) purports to require arbitration, (b) requires the arbitrator to decide what is arbitrable ("delegation provision"), and (c) directs the arbitrator not to apply the law of any state. "THE LOAN AND THIS AGREEMENT ARE NOT GOVERNED BY THE LAW OF YOUR STATE OF RESIDENCE OR ANY OTHER STATE."

59. The arbitration agreement, including the delegation provision, is an invalid "prospective waiver" of the PLPA, and has been held invalid in *Harris v. W6LS, Inc.*, 23cv16429, 2024 U.S. Dist. LEXIS 91687, 2024 WL 2319716 (N.D.Ill.), appeal pending. The loans involved in Harris (Exhibits M-N) are written on the same form as the loan to Plaintiff. *See also, Fahy v. Minto Dev. Corp.*, 23cv3590, 2024 U.S. Dist. LEXIS 45147 (N.D.Ill., Mar. 14, 2024); *Harris v. FSST Mgmt. Servs., LLC*, 686 F.Supp.3d 734 (N.D.Ill. 2023).

60. The arbitration agreement and delegation provision are also unconscionable.

*Harris v. FSST Mgmt. Services, LLC*, 22cv1063, 2023 U.S.Dist. LEXIS 138601, *19 (N.D.Ill., Aug. 9, 2023); accord, *Gingras v. Think Finance, Inc.*, 922 F.3d 112, 126-28 (2d Cir. 2019).

61. Finally, the Tribe does not have civil authority to prescribe rules of law for transactions conducted over the Internet with non-members of the Tribe. *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 782 (7th Cir. 2014); *Harris v. FSST Mgmt. Servs., LLC, supra,* 686 F.Supp.3d at 744; *Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.,* 769 F.3d 105, 115 (2d Cir. 2014).

62. The loans at issue are not made to members of the Tribe. Any Tribal "law" purporting to validate them is one that applies solely to non-members who have not set foot on Tribal land and purports to authorize what would otherwise be criminal or illegal conduct against them.

63. An arbitration agreement arises under State law; the Federal Arbitration Act merely prohibits states from discriminating against arbitration agreements. *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022); *Arthur Andersen L.L.P. v. Carlisle*, 556 U.S. 624, 631 (2009). By disclaiming State law, the agreement disclaims the only law which could permit its enforcement. *Harris v. FSST Mgmt. Servs., LLC*, 22cv1063, 2023 U.S. Dist. LEXIS 138601, at *15 (N.D. Ill. Aug. 9, 2023); *Fahy v. Minto Dev. Corp.*, 23cv3590, 2024 U.S. Dist. LEXIS 45147, at *37-38 (N.D. Ill. Mar. 14, 2024).

## COUNT I – FDCPA

64. Plaintiff incorporates paragraphs 1-63.

65. The FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses or abuses any debtor, and the use of any false or deceptive statements in connection with debt collection attempts. It also requires debt collectors to give debtors certain information. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

66. In enacting the FDCPA, Congress found that: "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the

9

loss of jobs, and to invasions of individual privacy." 15 U.S.C. §1692(a).

67. Because of this, courts have held that "the FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct." and that "[t]his intent cannot be underestimated." *Ramirez v. Apex Financial Management LLC*, 567 F.Supp.2d 1035, 1042 (N.D.Ill. 2008).

68. The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies and protect the civil rights expressed therein. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001).

69. Plaintiff seeks to enforce those policies and civil rights which are expressed through the FDCPA, 15 U.S.C. §1692 *et seq*.

70. By attempting to collect a void loan, Defendant violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(10), 1692f and 1692f(1).

71. Section 1692e provides:

False or misleading representations

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .

(2) The false representation of—

    (A) the character, amount, or legal status of any debt; . . .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .

72. Section 1692f provides:

Unfair practices

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. . . .

73. The collection or attempted collection of usurious loans violates the FDCPA. *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 408 (3rd Cir. 2000); *Nance v. Ulferts*, 282 F.Supp.2d 912 (N.D.Ind. 2003); *Patzka v. Viterbo College*, 917 F.Supp. 654, 658 (W.D. Wisc. 1996); *Martinez v. Albuquerque Collection Services, Inc.*, 867 F.Supp. 1495 (D.N.M. 1994).

74. As the loans at issue were legally unenforceable, no attempts to collect them were lawful.

## **CLASS ALLEGATIONS**

75. Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

76. The class consists of (a) all individuals (b) from whom Defendant attempted to collect a debt (d) which consisted of a loan made to a resident of Illinois (according to Defendant's records) at an interest rate in excess of 36% after March 23, 2021 (e) by means of a communication sent on or after August 12, 2023 (one year prior to the filing of this action).

77. Plaintiff may alter the class definition to conform to developments in the case and discovery.

78. On information and belief, there are more than 40 class members, and the class is so numerous that joinder of all members is not practicable. Defendant specializes in collecting high-interest Internet loans, as evidenced by the connection with the Online Lenders Alliance described above. Collection agencies normally obtain blocks of similar loans rather than individual loans.

79. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

    a. Whether Defendant engages in a practice of attempting to collect loans made to Illinois residents at over 36%;

    b. Whether such loans are unenforceable;

11

      c.      Whether the collection or attempted collection of such loans violates the FDCPA.

80. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

81. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and FDCPA litigation.

82. A class action is superior for the fair and efficient adjudication of this matter, in that:

      a.      Individual actions are not economically feasible.

      b.      Members of the class are likely to be unaware of their rights;

      c.      Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendant for:

      i.      Statutory damages ($1,000 for Plaintiff; 1% of Defendant's net worth not to exceed $500,000 for the class);

      ii.      Actual damages, including all amounts collected on the loans;

      iii.      Attorney's fees, litigation expenses and costs of suit;

      iv.      Such other and further relief as the Court deems proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Dulijaza (Julie) Clark
Alexandra Huzyk
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

Dedelman@edcombs.com
Jclark@edcombs.com
ahuzyk@edcombs.com

## LIST OF EXHIBITS

| | |
|---|---|
| A | Text message to Plaintiff |
| B | Email to Plaintiff |
| C | Text message to Plaintiff |
| D | Maslana loan agreement |
| E | Caliber Financial Services job listings 9/21/23 |
| F | Caliber Financial Services job listings 11/14/24 |
| G | LinkedIn listing of Tim Madsen, chief marketing officer at Caliber Financial Services |
| H | LinkedIn listing of Doug Oliveira, chief information officer at Caliber Financial Services |
| I | LinkedIn listing of Charlie Corbin, Recruiting Manager at Caliber Financial Services |
| J | Another LinkedIn listing of Charlie Corbin, Recruiting Manager at Caliber Financial Services |
| K | Server location of www.WithULoans.com |
| L | Notice from Washington State Department of Financial Institutions to WithU Loans |
| M | Loan agreement involved in *Harris v. W6LS, Inc.*, 23cv16429, 2024 U.S. Dist. LEXIS 91687, 2024 WL 2319716 (N.D.Ill.). |
| N | Second loan agreement involved in *Harris v. W6LS, Inc.*, 23cv16429, 2024 U.S. Dist. LEXIS 91687, 2024 WL 2319716 (N.D.Ill.). |

## **NOTICE OF LIEN AND ASSIGNMENT**

      Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

                                      */s/ Daniel A. Edelman*
                                      Daniel A. Edelman

## **DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

**CERTIFICATE OF SERVICE**

  Daniel A. Edelman certifies that on November 14, 2024 this document was filed by ECF, causing it to be served on all counsel of record.

                */s/ Daniel A. Edelman*
                Daniel A. Edelman